447 So.2d 529 (1984)
Dr. Richard C. BAKER, Plaintiff-Appellee,
v.
Claude SCOTT and Fannie P. Scott, Defendant-Appellant.
No. 16015-CA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
*530 Cook, Yancey, King & Galloway by Sidney E. Cook, Shreveport, Campbell, Campbell & Johnson by James M. Johnson, Minden, for plaintiff-appellee.
McConnell & Associates by Charles E. McConnell and James S. Harris, Springhill, for defendant-appellant.
Before PRICE and FRED W. JONES, JJ., and CULPEPPER, J. Pro Tem.
CULPEPPER, Judge Pro Tem.
This proceeding was initiated as a suit on an open account filed by Dr. Richard C. Baker on November 6, 1979 against Mrs. Claude Scott for dental services in the sum of $7,458 and 25% attorney's fees. Mrs. Scott answered denying liability and filed a reconventional demand for damages for dental malpractice. Dr. Baker filed an exception of prescription as to the reconventional demand, and this exception was referred to the merits. After a trial on the merits, the trial judge dismissed Dr. Baker's suit on an open account, overruled Dr. Baker's exception of prescription and rendered judgment in favor of Claude Scott and his wife, Fannie P. Scott on their reconventional demand against Dr. Baker and his liability insurer, Federal Insurance Company, in the sum of $13,374.50. Mr. and Mrs. Scott appealed, seeking an increase in the award. Dr. Baker answered the appeal, contending the trial judge erred in overruling the exception of prescription, and in the alternative that the district court erred in finding liability on the part of Dr. Baker and also erred as to the amount of the award.
The issues on appeal are: (1) Did the trial judge err in overruling Dr. Baker's exception of prescription as to the reconventional demand? (2) Did the trial judge err in finding Dr. Baker guilty of dental malpractice? (3) Is the award excessive or inadequate?
In excellent written reasons which we accept as our own except for the amount of the award, the trial judge has carefully analyzed the evidence, found the facts and correctly applied the law as follows:
Evidence shows that Dr. Baker, who was a practicing dentist in Minden, first performed professional services for Mrs. Scott in 1974 when he fitted a bridge in the upper front portion of her mouth. In April, 1979, Mrs. Scott was experiencing difficulties with the bridge and she consulted Dr. Baker. He determined that the bridge had worn through and was beyond saving and *531 the parties agreed that Dr. Baker would proceed to replace it. Dr. Baker also determined that extensive work needed to be done to her lower teeth.
The upper work was completed on April 19, 1979. Mrs. Scott later returned to Dr. Baker's office to discuss the lower teeth. Dr. Baker testified that he told her she would need fifteen units of crown and bridgework in the lower mouth. Price and method of payment were apparently agreed upon and on or about May 18, 1979, the preliminary work was done. On June 7, 1979, the crown and bridgework were fitted. Dr. Baker Testified (sic) that he felt that the margins on these crowns looked too bulky so he used a temporary cement and told Mrs. Scott to return in three days. Mrs. Scott denies that Dr. Baker told her to return. There is no evidence which suggests that Dr. Baker undertook to do any additional work, and his letter dated November 29, 1979 concerning his statement does not mention anything about her missing any appointments. In addition, Dr. William M. Hall, who examined her later, testified that none of the work done by Dr. Baker was of a temporary nature.
On June 23, 1979, Dr. Baker had an accident, and he has not practiced dentistry since that date. While Mrs. Scott returned to Dr. Baker's office after the June 7th date, and was treated for pain by another dentist in Dr. Baker's office, she has not seen Dr. Baker since June 7, 1979.
Mrs. Scott testified that she has had difficulty and has experienced much pain since shortly after Dr. Baker performed his work. She was not able to obtain relief from Dr. Baker's office. She also saw Dr. J.H. Connell in Minden, and on February 26, 1980, she consulted Dr. William M. Hall. When she first contacted Dr. Hall, she saw him in his capacity as President of the Northwest Louisiana Dental Society to lodge a complaint against Dr. Baker. She testified that she began to realize in September or October of 1979 that there was something wrong with the work done by Dr. Baker. When she first saw Dr. Hall, she also sought relief from the pain she continued to experience. Dr. Hall explained to Mrs. Scott what she should do to lodge the complaint. He also advised her that she needed to consult a dentist. He did not accept her as a patient until May 21, 1980.
Dr. Hall testified extensively about the condition of Mrs. Scott's mouth and the work performed by Dr. Baker. It was his conclusion and the Court is of the opinion that the evidence clearly establishes that Dr. Baker's work was substandard. If Dr. Baker had properly performed his work the condition of Mrs. Scott's mouth after that work would have been such that her teeth would be free from decay, she would have good occlusion, the crown and bridgework would fit properly and her gums would be healthy. In fact, her teeth had much decay, poor occlusion, open margins, ill fitting and loose bridgework, and she had a generally unhealthy mouth. Evidence also establishes that Dr. Baker extracted four teeth that could have been saved.
Dr. Perry Hollembeak, another expert witness, also examined Mrs. Scott after the work done by Dr. Baker. He said that her mouth was in a mess. Dr. Baker's work was unacceptable, and the only way to correct it was to remove what was done and restore the crowns and bridgework. He said that Mrs. Scott's problems were due to the manner in which Dr. Baker performed the work. In his opinion the cost of such work would be $8,000.00. Dr. Hollembeak saw Mrs. Scott only one time and he did not have the benefit of Dr. Baker's X-rays.
Dr. Jack W. Gamble, an oral surgeon, was called as a witness for Dr. Baker. He testified that he examined Mrs. Scott and that she had many crowns with extended margins which aggravated her peridontal condition. He would not necessarily attribute decay under the crowns to Dr. Baker's work because he said that it was possible for teeth to decay under crowns even if the dentist had done his work carefully. He was of the opinion, however, that the work done by Dr. Baker needed to be replaced.
*532 The evidence establishes that the work performed by Dr. Baker was below the standard of care ordinarily exercised by dentists in the area. The work he did for Mrs. Scott was not done correctly and was of no benefit to her. He is not entitled to recover any amount from her for the work he performed and his demands should be rejected.
Considering Mrs. Scott's claim against Dr. Baker, the record reveals that her reconventional demand was filed on June 10, 1981. The evidence shows that Dr. Baker began his work in early April, 1979 and last saw her on June 7, 1979, so the question of prescription is an issue and has been raised by exception. L.R.S. 9:5628 provides that a claim such as this must be brought within one year of the date of the act or from the date of the discovery of the alleged act. It was stipulated at the trial that Mrs. Scott's request for review [by a medical review panel under LSA-R.S. 40:1299.47] was filed on August 11, 1980. This is more than one year after the act, but within one year from the time that the evidence shows she discovered that there was something wrong with Dr. Baker's work. She testified that somewhere in Setpember (sic) or October, 1979, she began to believe that the work done by Dr. Baker was defective. Dr. Hall testified that when he saw her in February, 1980, Mrs. Scott knew her teeth hurt and that she had had them worked on and that was about the extent of it. The Court is satisfied that the request for review was filed within one year from the time that she had knowledge of the existence of facts that would have entitled her to bring a malpractice action, and that this request for review interrupted prescription and accordingly, the exception of prescription should be overruled.
Mrs. Scott is entitled to damages from Dr. Baker. Counsel for Dr. Baker argues that she has sustained no damages. He argues and the evidence shows that in April, 1979, when she consulted Dr. Baker, she needed extensive dental work costing a total of $6,648.00 and that when she consulted Dr. Hall in February, 1980, what was needed was the removal and replacement of the work done by Dr. Baker. Dr. Hall estimated the cost to be $7,550.00. Since she has not paid Dr. Baker, counsel argues, and the same work needs to be done, all she needed to do in February, 1980 was to have the work done by a dentist of her choice.
However, the evidence shows that the condition of Mrs. Scott's mouth deteriorated because of the work done by Dr. Baker. In reaching this conclusion, considerable weight is given to the testimony of Dr. Hall. Dr. Baker's own witness, Dr. Gamble, had no real dispute with Dr. Hall's conclusions. Evidence shows that some of the decayed areas in Mrs. Scott's teeth, which Dr. Baker had treated, had rampant overwhelming decayed areas when Dr. Hall examined her, whereas in those decayed areas which Dr. Hall did not treat, the decay had advanced, but not very much. There were decays under the crowns, there were many open margins, crowns were placed in such tight contacts with so little space between them that there was no room for gum tissue to exist in a healthy state between them, and they could not be properly cleaned. Consequently, the Court is of the opinion that the evidence shows that there was a deterioration of her dental health due to the work done by Dr. Baker. Dr. Hall testified that Dr. Baker pulled four bottom teeth which did not need to be pulled. Dr. Hall had the benefit of Dr. Baker's X-rays. His conclusion was not disputed by Dr. Gamble, who as mentioned above, testified for Dr. Baker. Two additional teeth, anchor teeth for the lower bridge, that Dr. Baker had put crowns on, were decayed and abcessed when Dr. Hall first examined her. Dr. Hall later performed root canals on these two teeth, but they were eventually lost. The loss of these two teeth cannot be attributed entirely to Dr. Baker because the evidence does not establish that they would have been lost even had they been treated earlier, but there can be no doubt but that they did substantially deteriorate because of the ill fitting and improperly prepared crowns. So counsel is not correct when he argues *533 that Mrs. Scott sustained no loss. When Dr. Baker performed his work the condition of Mrs. Scott's mouth was such that fixed bridgework could be placed in her mouth. Now, largely because of his improper work, she can no longer have a fixed bridge, but will have to have a removable one.
It is true that she needed extensive work when she first saw Dr. Baker in April, 1979, and Dr. Baker is not liable in damages for the condition of her mouth prior to his treatment. He is also not responsible for further deterioration of her condition after she became aware of the fact that, as Dr. Hall told her in February, 1980, she needed to see a dentist. However, Dr. Baker is responsible to her to the extent that her already poor condition deteriorated because of his treatment. He is also responsible for the considerable pain and suffering she has sustained up to the time she knew that more bridge and crown work needed to be done.
The evidence shows that Mrs. Scott has suffered considerable pain and distress and that her eating and sleeping have been affected. She has also lost four teeth, which while decayed and not perfectly healthy, were salvagable. Other teeth, particularly the two teeth described on November 22 and 27, which were eventually lost, deteriorated substantially, and as stated above, she can no longer be fitted with fixed bridgework in her lower mouth.
In the opinion of the Court, she is entitled to damages for pain and suffering and for the loss of teeth, and for the deterioration of the condition of her mouth due to the work performed by Dr. Baker in the amount of $12,500.00.
She is also entitled to the expenses she has incurred in receiving dental treatment which she would not have incurred had the work been properly performed, the evidence showing such expenses to be $874.50.
Accordingly, there should be judgment herein in favor of Mrs. Scott in the amount of $13,374.50 together with legal interest and costs.
As regards the issue of prescription, Dr. Baker contends on appeal that since he last treated Mrs. Scott on June 7, 1979, and the request for a medical review panel was not filed until August 11, 1980, this claim had already prescribed at the time a request for a review panel was filed, so the claim was already prescribed and could not be suspended by the filing of the request for review. The trial judge has answered this argument in his written reasons quoted above, where he points out that Mrs. Scott did not discover the defective work by Dr. Baker until September or October of 1979. On appeal, Dr. Baker argues that Mrs. Scott did not exercise reasonable diligence in trying to ascertain the existence of the malpractice. The trial judge did not expressly address the reasonable diligence issue, but it is obvious from his conclusion that he found Mrs. Scott had used reasonable diligence. Our review of the evidence convinces us that following completion of Dr. Baker's work in June of 1979, Mrs. Scott did have pain and discomfort and returned to Dr. Baker's office on August 8, 1979, for a prescription for pain. However, Mrs. Scott was justified in thinking that her pain and discomfort resulted from the massive amount of dental work performed by Dr. Baker and she was reasonable in that belief until September or October of 1979, when she began to think that the work done by Dr. Baker was defective.
As to the liability issue, the evidence abundantly supports the finding of the trial judge that Dr. Baker was guilty of malpractice.
The most serious issue in this case is the amount of the award. We have no difficulty in concluding the award is not excessive, but the plaintiff argues persuasively that it is inadequate. It is contended that of the $12,500 awarded by the trial judge for pain, suffering, loss of teeth and deterioration of the condition of her mouth due to the defective work performed by Dr. Baker, $7,550 will be required to pay another dentist to remove and replace the work done by Dr. Baker, which means *534 that the remainder of only $4,950 is in effect the award for general damages. Plaintiff cites Garrison v. State, Through Department of Highways, 401 So.2d 528 (La.App. 2d Cir.1981), where as the result of an automobile accident a young lady 14 years of age sustained bruises on both legs below the knees with superficial scarring and had two chipped front teeth. The trial judge awarded a total of $10,000. This court reduced the award from $10,000 to $4,000, of which apparently $1,000 was for the knee injuries and $3,000 was for the two chipped teeth. Plaintiff argues that by comparison her injuries resulting from Dr. Baker's negligence were much greater than those in Garrison.
Plaintiff also cites Delery v. Schneider, 410 So.2d 857 (La.App. 4th Cir.1982), where the court of appeal reversed the trial court's finding of plaintiff's contributory negligence and awarded plaintiff $10,000 in general damages for oral injuries, including several broken teeth, bruises and cuts on the lip and inside her mouth, requiring 30 visits to her dentist, four extractions, gold bridges and the prescription of antibiotics and pain pills for a period of over seven months.
Plaintiff cites Johnigan v. State Farm Mutual Automobile Insurance Company, 345 So.2d 1277 (La.App. 3d Cir.1977), where plaintiff suffered injuries to his left side and lower back in addition to the loss of two teeth. Of the total award of $8,000, approximately $4,000 was for the loss of two teeth, which would be $2,000 per tooth.
In the present case, Mrs. Scott, who was 49 years of age in 1979 when she went to see Dr. Baker, already had severe dental problems. Of her 16 upper teeth, six were missing, eight were decayed and only two were in good condition. Of her lower teeth, three were missing, four were in such bad condition as to need root canals and all the rest except two were badly decayed. She had abcesses and was having much pain. However, the trial judge found, and the evidence shows, that as a result of Dr. Baker's negligent treatment, the condition of Mrs. Scott's mouth deteriorated faster, principally because he ground off the enamel for crowns which did not fit or soon became loose resulting in exposure of the soft portions of the teeth which decayed rapidly. The trial judge found Dr. Baker pulled four teeth which could have been saved and that two more were later lost due to his treatment. This is a total of six teeth lost due to Baker's negligence. Also, because of the improper work, Mrs. Scott can no longer have a fixed bridge, but will have to have a removable bridge. As a result of the improper work, Mrs. Scott has suffered much pain in the past and will suffer much more in the future.
Under all the circumstances, we conclude the award should be increased to a sum which will provide Mrs. Scott with $15,000 in general damages over and above the $7,550 which the evidence shows will be necessary to remove and replace the work done by Dr. Baker. This is the lowest sum which the trial judge could have reasonably awarded. Thus, we will increase the award by the sum of $10,050, making the total award $23,424.50.
For the reasons assigned, the judgment appealed is amended to increase the total award from the sum of $13,374.50 to the sum of $23,424.50. Otherwise, the judgment is affirmed.
AFFIRMED AS AMENDED.